UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    Earl E. Krupp                              Case No. 13-12516

                                                    Honorable Sean F. Cox

_____/

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER
DISMISSING PLAINTIFF-APPELLANTS' ADVERSARY COMPLAINT**

This is an appeal from a bankruptcy court order. Plaintiffs-Appellants Ronald and Catherine DeCiero ("Appellants" or "the DeCieros") initiated an Adversary Proceeding in Defendant-Appellee Earl Krupp's ("Appellee" or "Krupp") Chapter 7 Bankruptcy case, claiming that their prior state court judgment against Krupp is a non-dischargeable debt per 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The DeCieros are judgment creditors of Krupp based on a Michigan circuit court's finding that Appellee and his brother, Fred Krupp, violated several Michigan laws during the course of Fred Krupp's sale of a recreational vehicle ("RV") to the DeCieros. The DeCieros obtained a judgment against Earl and Fred Krupp in the amount of $101,600 for violations of the Michigan Motor Vehicle Code ("MMVC")[1] and a judgment of $15,000 for violations of the Michigan Consumer Protection Act ("MCPA")[2].

Bankruptcy Judge Daniel S. Opperman entered judgment in favor of Krupp[3], finding that the judgment debt is dischargeable. Judge Opperman determined that he could not give collateral

---

[1] M.C.L. 257.300, *et. seq.*

[2] M.C.L. 445.901 *et. seq.*

[3] The Adversary Proceeding case number is 10-1381-dof. In that case, parties agreed to rely on the state court transcripts and their briefs in lieu of presenting live testimony.

estoppel effect to any issues litigated as part of the state court's judgment, and that Plaintiffs had otherwise failed to prove the elements of non-dischargeability under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

The DeCieros contend that the bankruptcy court erred in several respects, including 1) by failing to give collateral estoppel effect to the state court's judgment; 2) by reviewing the state court's factual findings *de novo*, even though it stated that the elements of collateral estoppel had been met, and 3) by holding that the state court judgment, predicated on violations of the MCPA and MMVC, is dischargeable.

The DeCieros also argue that Krupp cannot assert an agency defense on the issue of non-dischargeability. The DeCieros further maintain that its award of attorneys' fees and costs is non-dischargeable because the underlying judgment is non-dischargeable.

Krupp responds that 1) the bankruptcy court was correct in not applying collateral estoppel in this case; 2) the bankruptcy court was correct in finding the debt dischargeable because the DeCieros did not prove that Krupp's brother made any misrepresentation with the intent to deceive, as required by § 523(a)(2)(A), and 3) the bankruptcy court correctly held that the DeCieros did not prove that either Earl or Fred Krupp both willfully and maliciously injured them.

For the reasons set forth below, this Court AFFIRMS the bankruptcy court order dismissing Plaintiff-Appellants' adversary complaint.

## BACKGROUND

This case has a complicated procedural history that began with the sale of an RV, also commonly referred to as a "motor home." Appellee Earl Krupp owns Krupps Auto Sales, located in Lennon, Michigan, which specializes in the sale of motor homes. (Appellant Br. at 8; Bankr. Tr.

Op. at 2). Appellee's brother, Fred Krupp, manages the day-to-day operations of the business. (Appellant Br. at 8). In 2004, Fred Krupp purchased an RV from an insurance company auction and traveled to Florida to pick it up. (Bankr. Tr. Op. at 2). Fred Krupp testified that he purchased the RV "as-is" through an online sale by a broker hired by an insurance company. (Bankr. Tr. Op. at 4). Fred Krupp knew that the RV had been involved in a collision and testified to performing some repairs on the vehicle, including replacement of the windshield and the bonnet. (Bankr. Tr. Op. at 3).

After purchasing the RV, Fred Krupp used it for personal travel, driving it between Michigan and Florida with his family on a few occasions. (Appellee's Br. at 2). Fred Krupp testified that the RV did not exhibit any mechanical issues during those trips. (Bankr. Tr. Op. at 3). In January 2006, after about two years of ownership, Fred Krupp listed the RV for sale in the "as-is" vehicles section of e-Bay's auction marketplace. (Appellee's Br. at 2). The DeCieros submitted the highest bid offer of $100,600.00. (Appellee's Br. at 2).

During the state court trial, Ronald DeCiero testified that, prior to bidding on the RV, he had a phone conversation with Fred Krupp regarding the RV's condition and history. During that conversation, Fred Krupp allegedly stated that "he owned [the RV] for two years," "it was a very nice motor home," "there was nothing wrong with it, everything worked," except "the driver's windshield had a crack in it . . . and the leveling jack system did not work." (Appellant's Br. at Ex. D, p. 82). When asked whether "Mr. [Fred] Krupp disclose[d] anything to you that would have alerted you to the fact that this vehicle was ever in an accident," Ronald DeCiero testified, "absolutely not." (Appellant's Br. at Ex. D, p. 84). Of course, Appellee Earl Krupp maintains that Fred told the DeCieros "about the motor home's history and that it had been repaired." (Appellee's

3

Br. at 2).

The DeCieros' bid was accepted and they arranged to meet Fred Krupp in Michigan to finalize the sale. Ronald DeCiero conducted a walk-through of the RV and noticed that the steps were not functioning properly and the television would not turn on. (Bankr. Tr. Op. at 3). Other than a cursory examination, the DeCieros did not thoroughly inspect the motor home before purchasing it, nor did they have an inspector come out to assess its value, because they needed to leave Michigan quickly to return to their home state of Massachusetts. (Bankr. Tr. Op. at 3). The DeCieros claim that Fred Krupp told them that if they were not satisfied with their purchase, he would refund their money. (Bankr. Tr. Op. at 4).

During their trip back to Massachusetts, the DeCieros testified that they noticed several additional and serious issues with the RV. (Bankr. Tr. Op. at 4). The DeCieros maintain that they did not learn that the RV had been involved in a collision until after they purchased the RV, performed further investigation, and contacted its former owner. (Bankr. Tr. Op. at 4). The RV's former owner, referred to only as Mr. Tripp, informed the DeCieros that the RV had been involved in a fatal rollover collision and was declared a total loss by its insurer. (Bankr. Tr. Op. at 4). The DeCieros contacted Fred Krupp in an attempt to get their money back, but Fred Krupp refused to rescind the sale. (Bankr. Tr. Op. at 4). On August 26, 2006, the DeCieros filed suit against Appellee Earl Krupp, d/b/a Krupps Auto Sales, and his brother, Fred Krupp, in Genesee County Circuit Court.

### Genesee County Circuit Court Proceedings

In their state court complaint, the DeCieros pleaded eight counts against the Krupp brothers, including counts for common law fraud/misrepresentation, breach of express and implied warranties,

violation of the MMVC, revocation, and violations of the MCPA.

Resolution of the DeCieros' eight count complaint against the Krupp brothers occurred in two stages. Six of the DeCieros' eight counts, including their common law fraud count, were dismissed on the Krupps' motion for summary disposition pursuant to M.C.R. 2.116(C)(8) & (C)(10). (*See* Judge Neithercut's Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Disposition, Case No. 06-84663-NZ, Aug. 28, 2007). The state court summarily adjudicated those counts, by and large, due to the fact that the DeCieros failed to submit notarized affidavits in opposition to the Krupps' motion. (Neithercut Op. at 2-3). Notarization, the court found, was necessary for it to consider an affidavit in opposition to a motion for summary disposition. (Neithercut Op. at 2-3)("this Court will not consider the defective affidavits submitted by the Plaintiffs. This court also notes that as both Plaintiffs' witness and exhibit lists were stricken, the Plaintiffs do not have any other admissible evidence in opposition to Defendants' dispositive motion . . . .").

The parties headed to trial on the two remaining counts – Count IV (which the briefs do not indicate what it alleged), and Count VIII, which alleges numerous violations of the MCPA. At the close of the evidence, Judge Neithercut granted Plaintiffs' Motion for Directed Verdict, holding that Defendants violated MCL 257.217c(4)[4] for failing to surrender assigned certificate of title to the

---

[4] M.C.L. 257.217c(4) reads, in pertinent part: "If a dealer acquires ownership of a late model vehicle that is a distressed vehicle from an owner, the dealer shall receive an assigned certificate of title. If the assigned certificate of title is not a salvage or scrap certificate of title, the dealer . . . **shall surrender the assigned certificate of title to the secretary of state**, and if the estimated cost of repair, including parts and labor, is equal to or greater than 75% but less than 91% of the predamaged actual cash value of the vehicle, apply for a salvage certificate of title . . . ." (emphasis added.)

5

State of Michigan; MCL 257.233a(3)[5], for failing to present plaintiffs with a certificate of title or written statement, and any reassigned titles in [their] possession; MCPA, sections a, n, u, and y[6], for for failing to present plaintiffs with a certificate of title or written statement, and any reassigned titles in [their] possession; and MCPA sections e, s, t, u, y, bb and cc[7], for failing to disclose their

---

[5] M.C.L. 257.233a(3) reads, in pertinent part: "A dealer selling or exchanging vehicles required to be titled under this act shall present the certificate of title or written statement and any reassigned titles in his or her possession to the transferee.  The transferee or the transferee's agent shall inspect, print his or her name, sign and date the certificate or statement and return it to the transferor for submission to the secretary of state . . . ."

[6] MCPA, which is housed in M.C.L. 445.901 *et. seq.*, reads, in pertinent part:

(1)   Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

   (a)   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.
   (n)   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.
   (u)   Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment . . . .
   (y)   Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

[7] These sections of the MCPA read, in pertinent part:

(1)   Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

   (e)   Representing that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
   (s)   Failing to reveal a material fact, the omission of which tends to mislead or deceive  the consumer, and which fact could not reasonably be known by the consumer.
   (t)   Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer specifically consented to it.

knowledge that the vehicle was damaged in a collision. (Appellant's Br. at 4).

Because the state trial court directed a verdict in favor of the DeCieros on both remaining counts, the court charged the jury with determining the issue of damages only. On April 17, 2008, the jury awarded the DeCieros $101,600 in damages due to the Krupps' violations of the MMVC and $15,000 in damages due to the Krupps' violations of the MCPA. (Bankr. Tr. Op. at 5). Defendants Earl and Fred Krupp were held jointly and severally liable for this judgment, which also included multiple awards of attorneys' fees and costs totaling $79,243.34, $14,809.60, and $12,564.17. (Bankr. Tr. Op. at 5).

### Adversary Proceedings in Bankruptcy Court

Earl Krupp did not make any payments toward the state court judgment. (Bankr. Tr. Op. at 5). Instead, Krupp filed for Chapter 7 bankruptcy protection on December 17, 2009, with the judgment debt listed as his only unsecured, nonpriority claim. (Bankr. Tr. Op. at 5). The DeCieros timely filed their non-dischargeability action under Section 523(a)(2)(A) and (a)(6). (Bankr. Tr. Op. at 5).

Section 523(a)(2)(A) provides that a debtor will not receive a Chapter 7 discharge from any debt for money, property or services, to the extent obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). Section 523(a)(6) provides that a debtor will not receive a Chapter 7 discharge from any debt for willful and malicious injury by the debtor to another entity

---

(u)   [See fn 6, *supra*].
(y)   [See fn 6, *supra*].
(bb)  Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.
(cc)  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

or to the property of another entity.   11 U.S.C. § 523(a)(6).

In January 2011, the parties filed cross motions for summary judgment based on the alleged collateral estoppel effect of the state court judgment and merits of the underlying facts. The bankruptcy court denied both of those motions.

In July 2011, the DeCieros renewed their motion for summary judgment, whereby they continued to argue for application of collateral estoppel based on the state court judgment. (Bankr. Tr. Op. at 6).  Krupp filed a cross motion for summary judgment, alleging essentially the same bases for summary judgment as the DeCieros.  (Bankr. Tr. Op. at 6).

The bankruptcy court again denied both parties' motions, finding that "it would be improper to recognize the state court judgments as having an issue preclusive effect."  (Bankr. Tr. Op. at 6). In its opinion, the bankruptcy court determined that there were two main "final judgments" to be considered for collateral estoppel purposes – the summary judgment and the trial judgment (which incorporates the directed verdict).  (Bankr. SJ Op., Doc. #87, filed December 20, 2011, at 7-8).  The bankruptcy court reasoned that

> [t]he review of the Summary Judgment and Trial Judgment separately show that Michigan's four requirements for collateral estoppel are satisfied.  The unavoidable problem to finding that issue preclusion arises from those judgments, however, resonates from the struggle to harmonize the actual findings of both judgments and their bases.

(Bankr. SJ Op. at 8).  The bankruptcy court did not explain how or why it determined that "Michigan's four requirements for collateral estoppel [were] satisfied," only that, in its view, they were met.

The bankruptcy court further explained its hesitancy in giving collateral estoppel effect to the state court judgments:

8

> [The DeCieros] presently bring their fraud action under Section 523(a)(2)(A) only after the state court dismissed their fraud suit under Michigan law.  Per the Sixth Circuit, "[B]ankruptcy courts in Michigan have held uniformly that the elements of a fraud claim under Michigan law are identical to those necessary to determine non-dischargeability under 11 U.S.C. § 523(a)(2)(A)."  Both require a plaintiff to allege an injury resulting from the alleged fraud.  In the Summary Judgment, the state court unequivocally denied Plaintiffs' fraud count (Count I) due to its finding of "no admissible evidence that the [p]laintiffs . . . suffered a detriment."  Inexplicably, however, the state court also rendered the Directed Verdict in favor of Plaintiffs under the [MCPA] due to Defendant's "failure to disclose [his] knowledge of the vehicle being damaged in a collision to plaintiffs." . . . The Summary Judgment and the Trial Judgment appear to definitively find that Plaintiffs did not suffer, and then did suffer, an injury as a result of Defendant's alleged fraud.

(Bankr. SJ Op. at 8-9)(citations omitted).

The bankruptcy court also correctly noted that "[c]ollateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally.  The inability of a court to determine the basis for the prior judgment is, by itself, enough to preclude the defense of collateral estoppel."  (Bankr. SJ Op. at 7)(*citing Livingston v. Transnation Title Co. (In re Livingston),* 372 Fed. Appx. 613, 617 (6th Cir. 2010).  For this reason, the bankruptcy court determined that the state court judgments should not be given collateral estoppel effect in regards to the DeCiero's Section 523(a)(3)(A) or (a)(6) claims.  (Bankr. SJ Op. at 9).

The bankruptcy court permitted the parties to brief the outstanding issues and rely on the state court transcripts in lieu of presenting live testimony.  (Bankr. Tr. Op. at 6).  Having concluded that the state court judgments would not preclude the relitigation of any relevant issues, the bankruptcy court proceeded to address the merits of the DeCieros' non-dischargeability claims under Section 523(a)(2)(A) and (a)(6).  (Bankr. Tr. Op. at 6-7).

### **Bankruptcy court's disposition of the 523(a)(2)(A) claim**

The bankruptcy court noted that, in order to prevail on a Section 523(a)(2)(A) action, the

plaintiff must show that 1) the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; 2) the debtor intended to deceive; 3) the creditor justifiably relied on the false representation, and 4) its reliance was the proximate cause of loss. *In re Rembert*, 142 F.3d 277, 280 (6th Cir. 1998).

The bankruptcy court analyzed these elements in turn. First, the bankruptcy court held that, due to conflicting testimony from the parties, the DeCieros failed to establish by a preponderance of the evidence that Fred or Earl Krupp made any material misrepresentation to them. (Bankr. Tr. Op. at 8-9).

Next, the bankruptcy court held that the DeCieros failed to establish, by a preponderance of the evidence, that Earl or Fred Krupp had the required intent to deceive them. (Bankr. Tr. Op. at 9). In support of this conclusion, the court pointed to the fact that Fred Krupp listed the RV for sale in the "as-is" section, the fact that Fred disclosed *some* known defects to the DeCieros (such as the cracked windshield and broken hydraulic jacks), and the fact that Fred testified that he *did* disclose his knowledge of the collision to the DeCieros. (Bankr. Tr. Op. at 10).

The bankruptcy court also held that the DeCieros failed to prove, by a preponderance of the evidence, their justifiable reliance on any misrepresentations made by Earl or Fred Krupp. (Bankr. Tr. Op. at 10). The court seemed persuaded by the fact Ronald DeCiero had experience buying and selling over 100 vehicles, that the DeCieros did not inspect the RV beyond a cursory walk-through, and that the DeCieros did not hire a professional to inspect or appraise the RV. (Bankr. Tr. Op. at 11).

Based on the foregoing, the bankruptcy court dismissed the DeCiero's Section 523(a)(2)(A) claim. (Bankr. Tr. Op. at 12).

**Bankruptcy court's disposition of the 523(a)(6) claim**

The DeCieros argued that Krupp's violations of MCPA constitute willful and malicious injury in violation of Section 523(a)(6). (Bankr. Tr. Op. at 12). The DeCieros relied on this theory in the alternative to establish non-dischargeability of the judgment debt.

To prevail on a 523(a)(6) claim, a plaintiff must prove, by a preponderance of the evidence, that a debtor committed an injury that is both willful and malicious. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991)(establishing the "preponderance" standard). The United States Supreme Court has found that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)(quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The bankruptcy court held that the DeCieros failed to prove, by a preponderance of the evidence, that Earl or Fred Krupp willfully and maliciously injured them. (Bankr. Tr. Op. at 15). The court reasoned that Fred Krupp "may not have intended any wrongdoing inasmuch as he apparently believed that the 'as is' disclaimer in the eBay add [sic] sufficed under Michigan law to disclose the relevant, material information." (Bankr. Tr. Op. at 15). This, the court found, was enough to avoid the conclusion that Fred Krupp acted maliciously. Of course, if a party fails to prove either willful or malicious character of the conduct, the debt will be discharged. *Markowitz v. Campbell* (*In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). Therefore, the bankruptcy court dismissed the DeCiero's Section 523(a)(6) claim as well. This appeal followed[8].

---

[8] Earl Krupp also argued before the bankruptcy court that Fred was not his authorized agent and, therefore, he could not be held responsible for Fred's conduct. The bankruptcy court did not address that argument on the merits due to its finding of dischargeability in Earl Krupp's

## STANDARD OF REVIEW

The district court reviews the bankruptcy court's findings of fact for clear error. *In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998). "A finding is clearly erroneous when, despite evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Brown*, 237 F.3d 625, 626 (6th Cir. 2001). The district court reviews the bankruptcy court's conclusions of law *de novo*. *In re Hashim*, 372 B.R. 912, 918 (9th Cir. 2007). The issue of whether a bankruptcy court properly determined the applicability of collateral estoppel is reviewed *de novo* as well. *In re Markowitz*, 190 F.3d 455, 461 (6th Cir. 1999).

## ANALYSIS

In this case, the bankruptcy court held that the DeCieros failed to establish the non-dischargeability of Krupp's judgment debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).

On appeal, Appellants argue for reversal on two main grounds: 1) that the bankruptcy court erred by failing to give collateral estoppel effect to issues decided as part of the state court trial judgment, and 2) that the bankruptcy court erred by finding that Krupp's judgment debt is dischargeable. Appellants also argue that Earl Krupp is liable for Fred Krupp's conduct under agency theory, although the bankruptcy court never addressed this argument below due to its finding

of dischargeability. Finally, Appellants claim that their attorneys' fee awards are non-dischargeable based on the non-dischargeability of the underlying debt.

---

favor. (Bankr. Tr. Op. at 16).

I.    **Appellants failed to prove all of the elements of non-dischargeability under Section 523(a)(2)(A).**

Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed *de novo*. *In re Trantham*, 304 B.R. 298, 301 (B.A.P. 6th Cir. 2004).

To except a debt from discharge for false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence, the following elements:

(1)   the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
(2)   the debtor intended to deceive the creditor;
(3)   the creditor justifiably relied on the false representation; and
(4)   its reliance was the proximate cause of loss.

*In re Livingston*, 389 B.R. 1, 5 (E.D. Mich. 2008)(*aff'd*, 372 Fed. Appx. 613)(*citing In re Rembert*, 141 F.3d 277, 280–81 (6th Cir.1998)).  A plaintiff must show each element by a preponderance of the evidence.  *Grogan*, 498 U.S. at 286.  The court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to the debtor.  *Rembert*, 141 F.3d at 281.

The bankruptcy court held that the DeCieros, as the creditors of Debtor Earl Krupp, did not prove any of the abovementioned elements by a preponderance of the evidence.

Appellants would have this Court reverse the bankruptcy court's decision on the grounds that the state court's "findings of fact and conclusions of law establish the first four prongs required for non-dischargeability under § 523(a)(2)(A)." (Appellant's Br. at 29).  Essentially, Appellants argue that, had the bankruptcy court given full collateral estoppel effect to the state court trial judgment, that would have, in and of itself, satisfied all of the § 523(a)(2)(A) elements.

Appellants' argument is incorrect.  First of all, collateral estoppel bars the relitigation of

13

certain issues, not entire claims. (*See* Restatement Judgments, 2d, §§ 24, 27). More importantly, the state court never made an explicit finding of fact on the issue of whether Earl Krupp or Fred Krupp "intended to deceive" the DeCieros. Appellants even admitted as much during the hearing on this motion. (In re Earl Krupp Hearing Transcript, Oct. 10, 2013, at 5:3-12). Such a finding is required to prove non-dischargeability under § 523(a)(2)(A). Therefore, the Plaintiff-Appellants were required to prove the second prong of the test applicable to § 523(a)(2)(A) claims, i.e. that the debtor intended to deceive the creditor by its misrepresentation.

The bankruptcy court found, and this Court agrees, that Appellants have failed to prove the "intent to deceive" element of the § 523(a)(2)(A) test by a preponderance of the evidence, which is fatal to their claim. Under *Rembert*, intent is measured subjectively. 141 F.3d at 281. "A debtor intends to deceive a creditor 'when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor.'" *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001).

"Fraudulent intent requires an actual intent to mislead, which is more than mere negligence . . ." *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997). "Intent to deceive may be inferred from a "[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *In re Copeland*, 291 B.R. 740, 786 (Bankr.E.D.Tenn.2003) (citations omitted). Nevertheless, "[i]f there is room for an inference of honest intent, the question of non-dischargeability must be resolved in favor of the debtor." *In re Bird*, 224 B.R. 622, 627 (S.D. Ohio 1998).

On appeal, the DeCieros' only argument regarding intent is that "the bankruptcy court was precluded from revisiting the state court's findings, which necessarily included the requisite intent

14

to deceive." (Appellant's Br. at 30). As mentioned, the state trial court never made a factual finding that either of the Krupp brothers intended to deceive Appellants, nor was such an inference required for the state court to resolve the claims then before it. Appellants do not even attempt to show in the state court record that a finding of fraudulent intent was made.

Moreover, the evidence "leave[s] room for an inference of honest intent" on the part of the debtor and his brother. Fred Krupp posted the RV for sale on e-Bay in the "as-is" category, and specifically mentioned that the RV was being sold "as-is" in his advertisement. (Tr. Trans., Vol. II of III; p. 82). Appellant Ronald DeCiero testified that Fred Krupp informed him about the cracked windshield and improperly functioning hydraulic jacks. (Tr. Trans., Vol. II of III; p. 82). These undisputed facts weigh against the conclusion that Fred Krupp intended to deceive the Appellants. Even if Fred Krupp failed to disclose the previous collision to Appellants, as the state court found, the evidence gives no guidance as to whether that failure was intentional rather than inadvertent. Based on the foregoing, this Court AFFIRMS the bankruptcy court's order dismissing Appellants' Section 523(a)(2)(A) claim.

## II. Appellants failed to prove all the elements of non-dischargeability under Section 523(a)(6).

Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed *de novo*. *In re Trantham*, 304 B.R. 298, 301 (B.A.P. 6th Cir. 2004).

To prevail on a 523(a)(6) claim, a plaintiff must prove, by a preponderance of the evidence, that a debtor committed an injury that is both willful and malicious. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991)(establishing the "preponderance" standard). The United States Supreme Court has found that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that

15

leads to injury." *Kawaauhau*, 523 U.S. at 61-62.

Appellants note that the state court found that Earl and Fred Krupp failed to surrender the title of the RV to the State of Michigan so that a branded salvage title could be issued for the motor home, as required by Michigan law. *See* M.C.L. 257.217c(4). From this fact, Appellants argue that "[w]hen the law imposes a duty upon one to act, the failure of that one to act can be described as being willful." (Appellant's Br. at 35).

Appellant's argument ignores the applicable case law. Appellants recognized in their brief that they have the burden of proving that Appellee acted with intent to cause injury. Appellants presented no evidence to the bankruptcy court, nor to this Court, that in any way supports the conclusion that Appellee or his brother acted willfully, i.e. intended to cause Appellants any injury. Nor have Appellants presented any evidence that Appellee or Fred Krupp acted maliciously, i.e. "in *conscious* disregard of his or her duties." *In re Strozewski*, 458 B.R. 397, 403 (E.D. Mich. 2011)(emphasis added). Therefore, this Court AFFIRMS the bankruptcy court's order dismissing Appellants' Section 523(a)(6) claim because they have failed to prove the elements of that claim by a preponderance of the evidence.

## III.     The Issue of Agency

As Appellants noted in their brief, the trial court found that Earl Krupp was the principal of Krupp Auto Sales and that Fred Krupp, the person who actually conducted the RV sale with Appellants, was an agent of Krupp Auto Sales. The bankruptcy court did not address the issue of whether Earl Krupp could be held liable for Fred Krupp's actions for the purpose of dischargeability, however, because it determined that the Section 523(a) elements had not been met in any event.

Because this Court AFFIRMS the bankruptcy court's order on the Section 523(a) claims, this

Court also finds it unnecessary to address the issue of agency.

## CONCLUSION & ORDER

For the reasons set forth above, this Court AFFIRMS the bankruptcy court's order of April 11, 2013 dismissing Plaintiff-Appellants' Adversary Complaint against Debtor Earl E. Krupp.

**IT IS SO ORDERED.**

             S/Sean F. Cox
             Sean F. Cox
             United States District Judge

Dated: October 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 23, 2013, by electronic and/or ordinary mail.

             S/Jennifer McCoy
             Case Manager